Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com

Attorney for Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No.  20-00318-JMM |
| TIMOTHY A. DAVIS and PATRICIA A. DAVIS, | Chapter 11 (Subchapter V) |
| Debtors. | |

## DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION

### (Subchapter V)

This Plan is for a small business debtor under Subchapter V. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

A.     <u>Brief History of the Business Operations of the Debtor</u>. Debtors Tim and Patricia Davis are involved in the e-commerce business.  Davis Technology Solutions was founded in September 2014 and originally intended to be a managed computer service provider. Instead the Debtors decided to go into eCommerce sales on eBay.  Since 2014, until August 2020, Davis Technology Solutions was one of the largest eBay sellers in the USA.  The landscape changed and eBay lost more and more market value to other marketplaces, like Amazon and Walmart. eBay began focusing on and catering to smaller (new) sellers and maliciously pushed out larger sellers like the Debtors with policy changes specifically crafted to hurt their business.  Most large sellers gave up or failed. Davis Technology Solutions remained selling until August 2019, when eBay decided that it no longer wanted Davis Technology Solutions to sell on the eBay platform and shut down all of the accounts overnight, without notice. One month after our eBay accounts were shut down the eBay board forced their CEO, Devin Wenig, to resign. Shortly after that eBay began selling and liquidating its assets including the sale of eBay owned Stub Hub in a $4 billion deal.

eBay's downfall completely devastated Davis Technology Solutions as a seller. Going forward, the Debtors plan to continue to do what they did best, eCommerce. However, the Debtors are injecting themselves into more marketplaces than one to be highly resilient to a single marketplace failure. This diversification means that there will be no single point of failure. Having multiple online sales channels allows the Debtors to mitigate any single, and possibly multiple, disruption(s) from any marketplace.

B.    <u>Liquidation Analysis</u>. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as ***Exhibit A***.

C.    <u>Feasibility Projections</u>. The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

   i.    The Debtors have provided projected financial information as ***Exhibit B.***

   ii.    The Debtors' financial projections show that the Debtors will have projected monthly disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of approximately $107,100.00 for payment to unsecured creditors. Based on the anticipated class of unsecured creditors, the Debtors project general unsecured creditors will receive approximately 15% of their allowed claim amount.

   iii.    The final Plan Payment is expected to be paid on July 1, 2025.

   iv.    **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

## <u>ARTICLE 1</u>

### SUMMARY

1.1    This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the Debtors' creditors from cash flow from business operations and future income of the Debtors as set forth herein.

/

/

/

/

1.2     This Plan provides for:

| One (1) | Classes of priority claims |
|---------|----------------------------|
| Five (5) | Classes of secured claims |
| Two (2) | Classes of lease claims |
| One (1) | Classes of non-priority unsecured claims |
| One (1) | Class of equity security holders |

1.3     Non-priority unsecured creditors holding allowed claims will receive pro rata distributions totaling $107,100.00 to the class. This Plan also provides for the payment of administrative and priority claims.

1.4     All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

1.5     **Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult one**.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.     Class 1. This class shall consist of all allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8).

2.2.     Class 2. This class shall consist of the claim of MR Cooper to the extent allowed as a secured claim under § 506 of the Code, and the claim of TCF National Bank, to the extent allowed as a secured claim under § 506 of the Code

2.3.     Class 3. This class shall consist of the claim of TD Auto Finance to the extent allowed as a secured claim under § 506 of the Code.

2.4.     Class 4. This class shall consist of the claim of Bank of America to the extent allowed as a secured claim under § 506 of the Code.

2.5.     Class 5. This class shall consist of the claim of Idaho Central Credit Union to the extent allowed as a secured claim under § 506 of the Code.

2.6.  <u>Class 6</u>.  This class shall consist of the claim of John Deere Financial to the extent allowed as a secured claim under § 506 of the Code.

2.7.  <u>Class 7</u>.  This class shall consist of the claim of BMW Financial Services.

2.8.  <u>Class 8</u>.  This class shall consist of the claim of Chase Auto Finance.

2.9.  <u>Class 9</u>. This class shall consist of all unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtors have an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

2.10.  <u>Class 10</u>. This class shall consist of the interests of the individual Debtors in property of the estate.


## <u>ARTICLE III</u>

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS ND COURT FEES

3.1.  <u>Unclassified Claims</u>. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

3.2.  <u>Administrative Claims</u>. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

(a)  In the alternative to Article 3.2, in the event this Plan is non-consensually confirmed under § 1191(b), each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full through cash disbursement of all available funds that are not specifically dedicated to set monthly payments within this Plan.

3.3.  <u>Priority Tax Claims</u>. With respect to a claim of a kind specified in § 507(a)(8), the holder of such claim will receive on account of such claim regular installment cash payments of a total value, as of the Effective Date, equal to the allowed amount of the priority portion of such claim, over a period not to exceed sixty (60) months from the Petition Date. No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the unsecured class within this Plan, and shall be subject to any discharge granted to the Debtors under § 1192.

(a) <u>Internal Revenue Service</u>. The priority amount scheduled by the Debtors, as owed to the Internal Revenue Service, of $35,000.00 will be paid in full at 5.0% interest via equal monthly installments of $660.49 over fifty-four (60) months following the Effective Date.

(b) <u>Idaho State Tax Commission</u>. The priority amount scheduled by the Debtors, as owed to the Idaho State Tax Commission, of $10,000.00 will be paid in full at 5.0% interest via (i) equal monthly installments of $188.71 per month over sixty (60) months following the Effective Date.

3.4.    <u>Post-Confirmation Tax Claims</u>. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

## ARTICLE 4

## TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

4.1    Claims and interests shall be treated as follows under the Plan:

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Plan Treatment |
|---|---|---|---|
| 2 | MR Cooper | No | The secured claim of MR Cooper shall be allowed in the amount owed as of the Petition Date, less any continued Payments received prior to the Effective Date.  MR Cooper shall retain its lien on the Debtors' real property residence.<br><br>Regular Monthly Payments of $3,024.65 shall be disbursed beginning May 1, 2020 unless otherwise notified of payment change via amended claim or notice to the Debtors, Debtors' counsel, and the Trustee, sent in accordance with the notice provisions in Section 8.15. Regular monthly payments are subject to change upon future analysis of escrow, and it is responsibility of MR Cooper, or any subsequent servicer, to timely notice the proper ongoing payment to (i) the Reorganized Debtors, and (ii) the Trustee in accordance with the notice provisions in Section 8.15. |

|   |   |   | Disbursements made to MR Cooper shall be made directly by the Debtors and shall not be paid through the Trustee. |
|---|---|---|---|
| 2 | TCF Nat'l Bank | No | The secured claim of TCF Nat'l Bank shall be allowed in the amount owed as of the Petition Date (approximately $277,120.00), less any continued Payments received prior to the Effective Date.  TCF Nat'l Bank shall retain its lien on the Debtors' real property residence.<br><br>This secured claim shall be paid under this Plan as follows:<br><br>i. Three hundred twenty-four (324) equal monthly installments of principal and interest shall be made in the amount of $1,478.41.<br><br>ii. Interest shall accrue at the fixed rate of 4.5% per annum.<br><br>iii. The first monthly installment payment shall be made on May 1, 2020 and shall continue to be due on the 1st day of each month hereafter until the secured claim is paid in full.<br><br>Disbursements made to TCF Nat'l Bank shall be made directly by the Debtors and shall not be paid through the Trustee. |
| 3 | TD Auto Finance | No | The secured claim of TD Auto Finance shall be allowed in the amount owed as of the Petition Date, less any continued Payments received prior to the Effective Date.  TD Auto Finance shall retain its lien on the 2020 GMC Sierra truck.<br><br>Regular Monthly Payments of $1,259.95 shall be disbursed beginning May 1, 2020 unless otherwise notified of payment change via amended claim or notice to the Debtors, Debtors' counsel, and the Trustee, sent in accordance with the notice provisions in |

| | | | |
|---|---|---|---|
| | | | Section 8.15.  Payments shall continue on a monthly basis until the claim is paid in full.<br><br>Disbursements made to TD Auto Finance shall be made directly by the Debtors and shall not be paid through the Trustee. |
| 4 | Bank of America | No | The secured claim of Bank of America shall be allowed in the amount owed as of the Petition Date, less any continued Payments received prior to the Effective Date.  Bank of America shall retain its lien on the 2019 GMC Yukon.<br><br>Regular Monthly Payments of $1,253.27 shall be disbursed beginning May 1, 2020 unless otherwise notified of payment change via amended claim or notice to the Debtors, Debtors' counsel, and the Trustee, sent in accordance with the notice provisions in Section 8.15.  Payments shall continue on a monthly basis until the claim is paid in full.<br><br>Disbursements made to Bank of America shall be made directly by the Debtors and shall not be paid through the Trustee. |
| 5 | Idaho Central Credit Union | No | The secured claim of Idaho Central Credit Union shall be allowed in the amount owed as of the Petition Date, less any continued Payments received prior to the Effective Date.  Idaho Central Credit Union shall retain its lien on the 2015 Nissan GT-R.<br><br>Regular Monthly Payments of $1,364.19 shall be disbursed beginning May 1, 2020 unless otherwise notified of payment change via amended claim or notice to the Debtors, Debtors' counsel, and the Trustee, sent in accordance with the notice provisions in Section 8.15.  Payments shall continue on a monthly basis until the claim is paid in full.<br><br>Disbursements made to Idaho Central Credit Union shall be made directly by the Debtors and shall not be paid through the Trustee. |

| 6 | John Deere Financial | No | The secured claim of John Deere Financial shall be allowed in the amount owed as of the Petition Date, less any continued Payments received prior to the Effective Date.  John Deere Financial shall retain its lien on the John Deere Tractor.<br><br>Regular Monthly Payments of $421.00 shall be disbursed beginning May 1, 2020 unless otherwise notified of payment change via amended claim or notice to the Debtors, Debtors' counsel, and the Trustee, sent in accordance with the notice provisions in Section 8.15.  Payments shall continue on a monthly basis until the claim is paid in full.<br><br>Disbursements made to John Deere Financial shall be made directly by the Debtors and shall not be paid through the Trustee. |
| 7 | BMW Financial Services | Yes | The lease claim of BMW Financial Services shall be allowed in the amount realized through surrender and subsequent disposition by the creditor pursuant to applicable state law.<br><br>The Debtors are surrendering their interest in the certain 2018 BMW X5 M that serves as BMW Financial Services' collateral and will cooperate in the creditor's efforts to obtain possession of the collateral.  Following BMW's recovery of the surrendered collateral, which shall occur no later than 30 days following the Petition Date, BMW Financial Services shall dispose of the collateral under applicable state law. Following disposition of the collateral, which shall occur within 90 days after BMW receives possession of the collateral, BMW shall have thirty (30) days to file a Proof of Claim for any remaining deficiency balance thereunder.  Said deficiency balance Proof of Claim shall be included in the distribution to unsecured claims under this Plan. In the event BMW fails to file a Proof of Claim for any deficiency balance within one hundred fifty (150) days after the Petition Date, it shall not be allowed a deficiency claim. |

| | | | |
|---|---|---|---|
| 8 | Chase Auto Finance | Yes | A non-debtor third party is currently paying the lease payment for the 2017 Mazda 6, and will continue paying the remaining lease payments (through approximately August 2020).  At that time, the lease will expire and the vehicle will be returned to the lessor.  No payments are projected from the Debtors to Chase Auto Finance, and the return of the Mazda 6 shall satisfy any remaining claims of Chase Auto Finance. |
| 9 | All Allowed Non-Priority Unsecured Claims | Yes | This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contact or unexpired lease, each allowed claim secured by a lien on property in which the Debtors have an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.<br><br>The Debtor shall pay monthly payments of $650.00 for a period of six months, $1200.00 for months seven through twelve, and $2,000.00 for months thirteen through sixty (for a total disbursement of $107,100.00).  Claimholders in this class shall be paid pro-rata by the Trustee for these months, for a period of sixty months. The first payment shall be made through the Trustee beginning on the fifteenth day of the month following the Effective Date. |
| 10 | Debtors | | The Debtors shall retain all ownership rights in property of the estate. |

      4.2   <u>Waiver of Secured Status and Lien Rights by Claimants</u>. ***In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is***

*secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan*.

4.3    <u>Proof of Claim Controls Over Amount Scheduled by Debtor(s)</u>. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtors' schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

4.4    <u>Voiding of Liens</u>. Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims**.**

## ARTICLE 5

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1    <u>Objection to Claims</u>. The Debtors or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

5.2    <u>Disputed Claim</u>. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor(s), or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.3    <u>Delay of Distribution on Disputed Claims</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtors' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

5.4    <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtors shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

## ARTICLE 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    The Debtors assume, and if applicable assign, the following executory contracts and unexpired leases as of the Effective Date:

| Name of Other Party to Executory Contract/Lease | Description | Assignee |
|---|---|---|
| Vivint Home Security | Home Security System | |
| Chase Auto Finance | 2017 Mazda 6 lease | |
| | | |

6.2     Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before May 31, 2020. Any such timely filed allowed claims will participate in the distribution for unsecured creditors set out within the Plan.


# ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE PLAN


7.1     The Debtors will continue to operate their new e-Commerce businesses as outlined in paragraph A above.  The Debtors anticipate receiving the income outlined in the 12-month projections attached hereto to support this Plan.

7.2     As outlined in Article 4 above, the Debtors anticipate the Trustee to receive certain Plan Payments and act as the disbursing agent in distributing funds to allowed claims as provided under the Plan. It is anticipated that the Trustee will receive a maximum administrative commission equivalent to ten percent (10%) of the funds received after Confirmation; and that Plan Payments will be made from the Debtors to the Trustee through monthly Electronic Funds Transfers (EFTs) or other medium of efficient monetary transactions from the Debtors to the Trustee, as agreed and arranged between them.


# ARTICLE 8

## GENERAL AND MISCELLANEOUS PROVISIONS


8.1     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

(a) "Adequate Protection Payments" shall mean payments made by the Debtors to creditors holding claims secured by property of the Debtors, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

(b) "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

(c) "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

(d) "Court" shall mean the United States Bankruptcy Court for the District of Idaho and the Judge assigned to this case.

(e) "Debtors" shall mean Tim and Patricia Davis with the status of and rights conferred to Debtors-in-possession by § 1107 of the Code.

(f) "Disposable Income" shall mean all surplus income received by the Debtors after the payment of the reasonable and necessary living expenses of the Debtors and dependents.

(g) "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable. For purposes of the calculations and disbursements proposed within this Plan, an Effective Date of August 1, 2020 is presumed. However, the Debtors may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

(h) "Interests" shall mean the ownership interests held by the Debtors in Property.

(i) "Petition Date" shall mean April 3, 2020.

(j) "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

(k) "Plan Payments" shall mean all funds remitted by the Debtors, the Reorganized Debtors, and/or third parties on behalf of the Debtors or Reorganized Debtors to be distributed pursuant to the Plan.

(l) "Reorganized Debtors" shall mean the Debtors after Confirmation.

8.2    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3     <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.4     <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.5     <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Idaho govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.6     <u>Retention of Jurisdiction of the Court</u>. In addition to the continued jurisdiction after plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(i) To enter a final order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtors pursuant to Sections 10.02 and 10.04 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation order.

8.7    <u>Withdrawal of Plan</u>. At the option of the Debtors, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.8    <u>Retention of Claims</u>. Pursuant to § 1123(b)(3)(B) of the Code, the Debtors shall retain each and every claim, demand or cause of action whatsoever which the Debtors may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.9    <u>Continued Reporting Requirements</u>. Pursuant to Fed. R. Bank. P. 2015, the Debtors are required to file monthly operating reports until Confirmation. After Confirmation, the Debtors are required to file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10    <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.11    <u>Modification of the Plan</u>. The Debtors may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtors, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtors to modify the Plan under § 1193 and applicable rules.

8.12    <u>Early Payment</u>. Nothing herein shall prohibit the Reorganized Debtors from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtors to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtors shall not be prohibited from making an early payment of the projected amount to Class 9 claims, provided that the Debtors are current on any payments then required to Class 1 through Class 8 claims.

8.13    <u>Preservation of Claims and Causes of Action</u>. The Debtors retain and reserve all causes of action. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' schedules or this Plan. The Debtors shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar

the Debtors by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtors' Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtors in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtors may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan, the Disclosure Statement, and the Debtors' filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtors within 90 days prior to the Petition Date.

8.14    <u>Default Under Plan</u>. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtors (i) fail to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fail to insure the property securing the creditor's claim for the value of the property, or (iii) dispose of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

8.15    <u>Notice</u>. Unless otherwise directed by the Debtors in writing, notice of default shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtors or Reorganized Debtors: | Tim and Patricia Davis<br>24 Hawley Mountain Lane<br>Horseshoe Bend, ID 83629 |
| With copy to: | Matthew T. Christensen<br>ANGSTMAN JOHNSON<br>199 N. Capitol Blvd, Ste 200<br>Boise, ID  83702<br>mtc@angstman.com |
| With additional copy to: | Assigned Chapter 11 Trustee |

**ARTICLE 9**

**EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION**

9.1    <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtors' estate in the Debtor.

9.2    <u>Property Free and Clear</u>. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

9.3    <u>Legal Binding Effect</u>. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

9.4    <u>Effect on Third Parties</u>. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.5    <u>Release of Claims</u>. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtors or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.6    <u>Permanent Injunction</u>. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation order shall provide, among other things, that all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors on account of claims against the Debtors, or on account of claims released pursuant to section 9.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtors or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.7    <u>Exculpation</u>. Except as otherwise provided in the Plan or Confirmation order, the Debtors and the professionals for the Debtors shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination,

implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.8     Discharge [if under § 1191(a)]. If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.9     Discharge [if under § 1191(b)]. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.


# ARTICLE 10

## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN


10.1     Closing of the Case. After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured claimants, the Reorganized Debtors will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

10.2     Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtors may continue to avail themselves to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtors and the Trustee, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In any *Motion for Final Decree*, the Reorganized Debtors shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtors' *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

10.3    <u>Continued Execution of the Plan after Closing</u>. After closing of the case, the Reorganized Debtors shall remit all Plan Payments to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtors shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.4    <u>Professional Fees after Closing</u>. After closing of the case, the Reorganized Debtors may continue to avail themselves to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtors, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtors, or the Trustee, in the event the Trustee remains in place to receive and distribute funds under the Plan. Pursuant to Section 8.06(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute.

DATED this 3rd day of April, 2020.


_____
            /s/ Tim Davis
Timothy Davis, Debtor




_____
            /s/ Patricia Davis
Patricia Davis, Debtor




_____
            /s/ Matt Christensen
Matthew T. Christensen
Attorney for the Debtors

**Attachment 1 - Table of Unsecured Claims**

The Debtors' general unsecured debts (i.e., not including priority unsecured claims), as reflected in the Debtors' schedules is shown below. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amounts listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

| Name of Creditor | Amount of Claim | Source of Amount |
|---|---|---|
| American Express | $131,747.00 | Schedule F |
| Bank of the West | Unknown | Schedule F |
| Bank OZK | Unknown | Schedule F |
| Capital One | 82,517.00 | Schedule F |
| Chtd Company | Unknown | Schedule F |
| Citibank | $1,457.16 | Schedule F |
| eBay | $150,567.32 (multiple) | Schedule F |
| First Corporate Solutions | Unknown | Schedule F |
| Gem State Radiology | $133.28 (multiple | Schedule F |
| HughesNet | Unknown | Schedule F |
| Incorp Services | $177.92 | Schedule F |
| Kabbage, Inc. | $120,445.84 | Schedule F |
| Medicredit | $1917.32 | Schedule F |
| Norco, Inc. | $855.72 | Schedule F |
| Paypal | $84,690.18 | Schedule F |
| Pediatrix Medical Group | $781.95 (multiple) | Schedule F |
| St. Alphonsus | $9,329.12 (multiple) | Schedule F |
| Swift Financial | $77,017.80 | Schedule F |
| Synchrony Bank | $26,636.66 | Schedule F |
| Yamaha Motor Finance | $4,227.61 | Schedule F |

# EXHIBIT A

## TIM DAVIS HYPOTHETICAL LIQUIDATION ANALYSIS

| RESIDENCE | FMV | 1ST Lien | 2ND Lien | EXEMPTIONS | NON-EXEMPT EQUITY | LIQUIDATION VALUE TO ESTATE |
|---|---|---|---|---|---|---|
| 24 Hawley Mountain Lane, Horsheshoe Bend, ID | 1,000,000.00 | 406,000.00 | 278,000.00 | 175,000.00 | 141,000.00 | $61,000.00 |

| OTHER REAL PROPERTY | FMV | 1ST DOT | 2ND DOT | EXEMPTIONS | NON-EXEMPT EQUITY | |
|---|---|---|---|---|---|---|
| None | 0.00 | | | | 0.00 | $0.00 |

| BUSINESSES | VALUE OF DEBTOR'S INTEREST | | | EXEMPTIONS | NON-EXEMPT VALUE | |
|---|---|---|---|---|---|---|
| Davis Technology Solutions, LLC | $0 | | | | 0 | $0.00 |
| TPD Holdings, LLC | $0.00 | | | | $0.00 | $0.00 |
| Lickety Split LLC | $0.00 | | | | $0.00 | $0.00 |
| Hot Beans, LLC | $0.00 | | | | $0.00 | $0.00 |
| Ding-a-Ling Services, LLC | $0.00 | | | | $0.00 | $0.00 |
| Swiftsy, LLC | $0.00 | | | | $0.00 | $0.00 |

| PERSONAL PROPERTY | FMV | | | EXEMPTIONS | NON-EXEMPT VALUE | |
|---|---|---|---|---|---|---|
| CASH | $52 | | | $52 | $0 | $0 |
| Checking (Zions) | $4,714 | | | $3,536 | $1,179 | $1,179 |
| Savings | $15 | | | $11 | $4 | $4 |
| HHG | $11,605 | | | $9,875 | $1,730 | $1,298 |
| RETIREMENT ACCOUNT | $0 | | | | $0 | $0 |
| AUTO - 2020 GMC Sierra | $60,900 | $72,350 | | $10,000 | -$21,450 | $0 |
| AUTO - 2019 GMC Yukon | $63,257 | $72,891 | | $10,000 | -$19,634 | $0 |
| AUTO - 2018 BMW X5 (leased) | $0 | $28,628 | | $0 | -$28,628 | $0 |
| AUTO - 2015 Nissan GT-R | $59,700 | $60,000 | | $14,000 | -$14,300 | $0 |
| AUTO - 2017 Mazda 6 (leased) | $0 | $951 | | | -$951 | $0 |
| AUTO - 2015 Polaris Razr | $2,060 | $1,000 | | | $1,060 | $795 |
| AUTO - Trailer | $500 | $500 | | | $0 | $0 |
| AUTO - John Deere tractor | $12,000 | $12,000 | | | $0 | $0 |
| AUTO - Golf Cart | $2,000 | | | | $2,000 | $1,500 |

| | |
|---|---|
| **TOTAL AVAILABLE FROM POTENTIAL CHAPTER 7 LIQUIDATION** | **$65,774.87** |
| **Chapter 7 Trustee Compensation** | **$6,538.74** |
| **TOTAL POTENTIAL CHAPTER 7 DISTRIBUTION** | **$59,236.13** |

Notes:

Note 1: Value of business interests is based business not holding any assets.

Note 2: Liquidation value is based on as-is value of real property and assumes 8% closing costs.

Note 3: Liquidation value of personal property assumes a 25% discount and transaction cost.

Note 4: Chapter 7 Trustee fees are calculated using the standard Trustee fee calculation

Note 5:  Leased vehicles are valued as $0 based on the Debtor returning the vehicles to the lessor.

# EXHIBIT B

## 12-month projections

Income is expected to increase 10% over the next 12 months.

| INCOME | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Oct-20 | Nov-20 | Dec-20 | Jan-21 | Feb-21 | Mar-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Business Income | $16,000.00 | $16,133.00 | $16,266.00 | $16,400.00 | $16,533.00 | $16,666.00 | $16,800.00 | $16,933.00 | $17,066.00 | $17,200.00 | $17,333.00 | $17,466.00 |

| EXPENSE | PAYMENT | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First Mortgage | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 | $3,024.65 |
| Second Mortgage | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 | $1,478.41 |
| Yukon | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 | $1,253.27 |
| Truck | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 | $1,259.95 |
| GTR | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 | $1,364.19 |
| Electric | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Propane | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | |
| HOA Dues | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Satellite TV | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Life Insurance | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 |
| Yamaha | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 | $535.00 |
| Umbrella Policy | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 | $71.00 |
| Tractor | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 | $421.00 |
| Vehicle Gas | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 | $430.00 |
| Personal/Child Care | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 |
| Groceries | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Home/Pool Maintenance | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 | $350.00 |
| Doctor/Medication | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |

| TOTAL | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | $16,000.00 | $16,133.00 | $16,266.00 | $16,400.00 | $16,533.00 | $16,666.00 | $16,800.00 | $16,933.00 | $17,066.00 | $17,200.00 | $17,333.00 | $17,466.00 |
| Expenses | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 | $13,479.47 |
| Remainder | $2,520.53 | $2,653.53 | $2,786.53 | $2,920.53 | $3,053.53 | $3,186.53 | $3,320.53 | $3,453.53 | $3,586.53 | $3,720.53 | $3,853.53 | $3,986.53 |
| Internal Revenue Service | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 | $660.49 |
| Idaho State Tax Commission | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 | $188.71 |
| Chapter 11 Trustee payment | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| **Net Disposable Income** | **$671.33** | **$804.33** | **$937.33** | **$1,071.33** | **$1,204.33** | **$1,337.33** | **$1,471.33** | **$1,604.33** | **$1,737.33** | **$1,871.33** | **$2,004.33** | **$2,137.33** |